**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANTHONY DIEUDONNE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12476** |
| **UNITED PROPERTY AND CASUALTY INSURANCE COMPANY** | **SECTION: "H"** |

**ORDER AND REASONS**

Before the Court are Plaintiffs Anthony and Tina Dieudonne's Motion for Summary Judgment (Doc. 111), and Defendant's Motion for Partial Summary Judgment on Limitation of Recovery to Actual Cash Value (Doc. 115). For the following reasons, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**,[1] and Defendant's Motion is **GRANTED**.

[1] For ease of reference, the following claims from Plaintiffs' Motion are denied: 2, 5, 11, 12, 13, 14, and 15. Claims 1, 3, 4, 6, 7, 8, and 9 are granted. Claim 10 is granted in part, denied in part.

## BACKGROUND

This case arises out of a fire that destroyed much of Plaintiffs' house on January 7, 2019. On the date of loss, Plaintiffs had a homeowner's insurance policy ("the Policy") issued by Defendant United Property and Casualty Insurance Company ("UPC"). Shortly after the fire, Plaintiffs submitted satisfactory proof of loss, and UPC began adjusting the loss and tendering payments. Contesting UPC's handling of their claims, Plaintiffs filed suit in July of 2019, claiming that UPC breached its obligations under the Policy and handled their claims in bad faith. On February 19, 2020, Plaintiffs sold the house.

Plaintiffs now move for summary judgment on their claims. The present Motion primarily disputes the calculation of loss, depreciation, and other loss settlement provisions.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

---

[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

Plaintiffs' Motion for Summary Judgment asks this Court to interpret several provisions of their Policy with Defendant UPC. "Interpretation of a contract is the determination of the common intent of the parties."[10]

> In Louisiana, "[a]n insurance policy is an aleatory, nominate contract subject to the general rules of contract interpretation as set forth in [Louisiana's] civil code. The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. Thus, when interpreting an insurance contract, courts must attempt to discern the common intent of the insured and insurer."[11]

Additionally,

> Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. . . . Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.[12]

These principles guide the Court's analysis, as the parties dispute the proper interpretation of a number of key provisions in the Policy. The main dispute concerns the Coverage sections A and C, which detail the coverage provided by the Policy for the dwelling and personal property, respectively. The Court will

---

[10] LA. CIV. CODE art. 2045.

[11] Consedine v. Personnel Management, Inc., 539 Fed. Appx. 565, 572 (5th Cir. 2013) (quoting Succession of Fannaly v. Lafayette Ins. Co., 805 So. 2d 1134, 1137 (La. 2002)).

[12] Lexington Ins. Co. v. St. Bernard Parish Gov., 548 Fed. Appx. 176, 178 (5th Cir. 2013) (quoting Elliott v. Cont'l Cas. Co., 949 So. 2d 1247, 1254 (La. 2007)).

set forth the relevant Policy provisions at issue before addressing Plaintiffs' arguments specifically. Coverage Sections A and C provide in relevant part:

> SECTION I – PROPERTY COVERAGES
> A. Coverage A – Dwelling
> 1. We cover:
> a. The dwelling on the "residence premises" shown in the Declarations . . . .
> C. Coverage C – Personal Property
> 1. Covered Property
> We cover personal property owned or used by an "insured" while it is anywhere in the world . . . .[13]

Plaintiffs dispute UPC's loss settlement of their Coverage A and C claims. The germane provision is the condition entitled "D. Loss Settlement," which provides, in relevant part:

> Covered property losses are settled as follows:
> 1. Property of the following types:
> a. Personal property;
> b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; . . .
> at actual cash value at the time of loss but not more than the amount required to repair or replace.
> 2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following: . . .
> d. We will pay no more than the actual cash value of the damage until repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above. . . .
> e. You may disregard the replacement cost loss settlement provisions and make claim under this

[13] Doc. 111-4 at 10.

> policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition D. Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.[14]

Because Plaintiffs sold their house, both parties agree—with some exceptions—that actual cash value ("ACV") is the proper measure of recovery under Coverages A and C. The Policy defines ACV as "the amount needed to repair or replace the damaged or destroyed property, minus the depreciation."[15]

Having laid out the relevant Policy provisions with respect to Coverages A and C, the Court will analyze Plaintiffs' Motion. Plaintiffs seek summary judgment on 15 claims. The Court will address each issue raised by Plaintiffs' Motion in turn.

**1. Whether Depreciation Applies Only to Wearable Surfaces and Mechanical Items Under Coverages A and C**

First, Plaintiffs seek summary judgment declaring that depreciation should be applied only to "wearable surfaces" and "mechanical items."[16] In making this argument, Plaintiffs rely on UPC's internal claims guidelines. In

---

[14] *Id.* at 21–22.

[15] *Id.* at 78. Both parties agree that this is the Policy's definition of ACV. Docs. 111-2 at 6 ("ACV is defined in UPC's policy as the amount needed to repair or replace the damaged or destroyed property, minus the depreciation."); 128 at 9 ("Starting with the UPC Policy itself, actual cash value is defined as 'the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.'").

[16] Doc. 111 at 1, Claim 5.

response, UPC argues that depreciation should be applied to all losses and that Plaintiffs' reading of the guidelines is misplaced.

The relevant claims guideline provides, "Estimates must show applicable depreciation applied on dollar one, on all wearable surfaces and mechanical items. Depreciation should be applied to the unit cost (labor and materials). Consider use, age, condition, wear and tear, and obsolescence. Depreciation must be on item-by-item basis."[17] Plaintiffs contend that this language from an internal, company document binds UPC to calculate ACV in a specific way by designating "wearable surfaces" and "mechanical items" as the only proper objects of depreciation.[18]

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[19] The Court finds that the Policy's definition of ACV is not ambiguous, at least not in the respect Plaintiffs insist in their Motion. Per the Policy, ACV is the amount needed to repair or replace the damaged or destroyed property, minus depreciation. Plaintiffs would have this Court read the phrase "the damaged or destroyed property" as referring only to wearable surfaces and mechanical items. That is not a reasonable interpretation of the Policy's definition of ACV. An ACV payment is meant to return insureds to their pre-

---

[17] Doc. 111-15 (sealed).

[18] Doc. 111-2 at 6 ("From this provision in UPC's guidelines, what becomes clear is that depreciation is *only* applicable to all wearable surfaces and mechanical items.") (emphasis added).

[19] LA. CIV. CODE art. 2046.

loss state.[20] If the insurer paid the cost to repair or replace every item other than wearable surfaces and mechanical items without deducting depreciation, the insured would be better off than in her pre-loss state. Accordingly, the Court holds that in order to calculate the ACV, depreciation should be calculated on all damaged and destroyed property.

**2. Whether the Calculation of Depreciation Includes Labor and Sales Tax Under Coverages A and C**

Next, Plaintiffs seek summary judgment on the proper calculation of depreciation under Coverages A and C.[21] Here, Plaintiffs argue that UPC improperly included labor and sales tax in the depreciation calculation that is part of the determination of ACV. UPC, relying on its claim guidelines, argues that labor and sales tax are properly included. UPC avers that its claim guidelines effectively provide admissible extrinsic evidence for the Court's consideration. The guidelines provide that "[d]epreciation should be applied to the unit cost (labor and materials)."[22]

"[W]hen the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention

---

[20] Bradley v. Allstate Ins. Co., 620 F.3d 509, 520 (5th Cir. 2010) (citing Bingham v. St. Paul Ins. Co., 503 So. 2d 1043, 1045 (La. Ct. App. 2d Cir. 1987)).
[21] Doc. 111 at 2, Claim 7.
[22] Doc. 111-15 (sealed).

of the parties."[23] Parol evidence is not allowed to amend or add to the terms of a written contract, however.[24] "If an ambiguity remains after applying the other general rules of construction, then the ambiguous contractual provision is to be construed against the drafter."[25]

While the Policy fails to define depreciation, this Court rejects UPC's invitation to review the internal claims guidelines for clarity. Extrinsic or parol evidence may provide the meaning of an ambiguous term, but only where the evidence shows the mutual intent of the parties.[26] Here, UPC has not shown that their internal guidelines constitute proper extrinsic evidence for this Court's consideration. There is no evidence that these internal claims guidelines represent both parties' intent. Indeed, there is no evidence that Plaintiffs were even aware of the existence of these guidelines prior to the institution of this lawsuit. As a result, this Court will not accept that the guidelines reflect the common intent of the parties. In addition, the Court does not find that the ambiguity in calculating depreciation under the Policy can be clarified in light of the contract as a whole or by considering how a reasonable insurance policy purchaser would have construed the clause at the time that

---

[23] Condrey v. SunTrust Bank of Ga., 429 F.3d 556, 563 (5th Cir. 2005) (citing Martin Exploration Co. v. Amoco Prod. Co., 637 So. 2d 1202, 1205 (La. Ct. App. 1st Cir.), *writ denied*, 644 So. 2d 1048 (La. 1994)).

[24] *Id.* (citing Edwards v. State of La., Through the Dep't of Corrections, 244 So. 2d 69, 72 (La. Ct. App. 1st Cir. 1971)).

[25] Brock Services, L.L.C. v. Rogillio, 936 F.3d 290, 298 (5th Cir. 2019) (quoting Chinook USA, L.L.C. v. Duck Commander, Inc., 721 Fed Appx. 361, 366 (5th Cir. 2018)

[26] Chinook USA, LLC v. Duck Commander Inc., No. 16-0113, 2017 WL 7693509, at *1 ("[P]arol evidence is admissible to clarify the ambiguity and to show the intention of the parties.") (citing Dixie Campers, Inc. v. Vesely Co., 398 So. 2d 1087, 1089 (La. 1981)).

the contract was entered into.[27] "[I]f after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured."[28] This Court must therefore define depreciation in the Policy in favor of the insured.

On this point, the Court finds the case of *Mitchell v. State Farm Fire & Casualty Co.* instructive.[29] There, as here, the court was tasked with determining whether the depreciation calculation used for ACV should include labor.[30] Applying Mississippi law, the Fifth Circuit determined that if the insured's interpretation is a reasonable one—not necessarily the most reasonable—then the term is ambiguous and the insured's interpretation must prevail.[31] There, the court found that the insured's interpretation which excluded labor and sales tax from the depreciation calculation to determine ACV was reasonable.[32] The court noted that the insured's definition was reasonable "because it restores an insured to her status at the moment before the damage occurred."[33] Louisiana law warrants the same result.[34]

The Policy issued by UPC provides that ACV is replacement cost less depreciation. There is no provision in the Policy that defines depreciation, nor

---

[27] *See* Smith v. Am. Family Life Assur. Co. of Columbus, 584 F.3d 212, 216 (5th Cir. 2009) (outlining these two methods of resolving ambiguity).
[28] *Lexington Ins. Co.*, 548 Fed. Appx. at 178 (quoting *Elliott*, 949 So. 2d at 1254).
[29] 954 F.3d 700 (5th Cir. 2020).
[30] *Id.* at 703.
[31] *Id.* at 706.
[32] *Id.*
[33] *Id.*
[34] Cochran v. B.J. Servs. Co. USA, 302 F.3d 499, 502 (5th Cir. 2002) ("[I]t is well-settled Louisiana law that . . . 'any ambiguity is construed in favor of the insured.'") (quoting Ledbetter v. Concord Gen. Corp., 665 So. 2d 1166, 1169 (La. 1996)).

is there any parol evidence that provides evidence of both parties' intent. Accordingly, this Court finds the Policy ambiguous on this issue, and this ambiguity must be resolved in the insureds' favor. Plaintiffs argue that depreciation used to calculate ACV should exclude labor and sales tax. This Court does not find that to be an unreasonable interpretation. Accordingly, Plaintiffs' Motion on this issue is granted, and labor and sales tax shall be excluded from depreciation for the ACV calculation.

**3. Whether the Calculation of Depreciation Requires the Item-by-Item Consideration of "Use, Age, Condition, Wear and Tear, and Obsolescence"**[35]

Plaintiffs seek summary judgment declaring that "in determining depreciation, UPC must consider the item's 'use, age, condition, wear and tear, and obsolescence'" and that depreciation applies "on an item-by-item basis."[36] In support, Plaintiffs point to UPC's claims guidelines, which instruct as follows: "Depreciation should be applied to the unit cost (labor and materials). Consider the use, age, condition, wear and tear, and obsolescence. Depreciation must be on item-by-item basis."[37] UPC responds that these instructions are not part of the Policy itself and so cannot bind the parties, but otherwise UPC provides no opposition.

"Depreciation" is not defined in the Policy, and the Court finds the Policy ambiguous as to how depreciation should be calculated. The parties have again failed to provide parol evidence of their mutual intent. Accordingly, the Court

---

[35] Doc. 111 at 1, Claim 6. Claim 8 refers to depreciation's item-by-item application.
[36] *Id.* at 1–2, Claims 6, 8.
[37] Doc. 111-15 (sealed).

must consider whether Plaintiffs' interpretation is reasonable. Plaintiffs read "depreciation" as applying item by item based on use, age, condition, wear and tear, and obsolescence. Though the claims guidelines are not part of the Policy, they do support Plaintiffs' reading, which the Court finds a reasonable one. To put an insured back in her pre-loss state, items should be depreciated individually, and the factors Plaintiffs identify are relevant ones. Thus, the Court finds the Policy to be ambiguous on this point, and Plaintiffs' interpretation to be reasonable.[38] Accordingly, the Court grants summary judgment to Plaintiffs on this claim.[39] However, the Court notes that this holding does not speak to whether UPC complied with this reading of depreciation in its claims adjustment; that issue is not before the Court.

### 4. Whether ACV Is Replacement Cost of Materials of Like Kind and Quality Less Depreciation

Plaintiffs next seek summary judgment declaring that "Actual Cash Value is calculated by determining Replacement Cost for the same item or, if unavailable, one of like kind and quality, then deducting depreciation."[40] UPC provides no opposition to this. The Fifth Circuit has held that "ACV is determined by calculating the cost of duplicating the damaged property with new materials of like kind and quality, less allowance for physical deterioration

---

[38] *See supra* note 27.

[39] Claims 6 and 8, Doc. 111 at 1–2. Claim 8 also avers that "Replacement Cost" and "Actual Cash Value" are determined on an item-by-item basis. For the same reasons as above, the Court will grant summary judgment to Plaintiffs on these subclaims as well.

[40] Doc. 111 at 1, Claim 4.

and depreciation."[41] Accordingly, Plaintiffs' interpretation is reasonable, and the Court grants summary judgment to Plaintiffs on this point.

**5. Whether the $500 Threshold Under Coverage C Applies on an Item-By-Item Basis or on the Aggregate Value of All Covered Property**

Plaintiffs seek summary judgment declaring that under Coverage C, the proper application of the $500 threshold is on an item-by-item basis.[42] Plaintiffs argue that the Policy requires UPC to pay replacement cost value ("RCV") on all items of personal property worth equal to or less than $500. UPC avers that the Policy provides that ACV is the proper payment on a loss to personal property that exceeds $500 in the aggregate.

The Policy provision at issue provides:

> If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.[43]

The phrase "the property described in A. above" refers to the section titled "A. Eligible Property," which provides, in part:

> 1. Covered losses to the following property are settled at replacement cost at the time of the loss:
> a. Coverage C . . . [44]

[41] *Bradley*, 620 F.3d at 520 (citing Real Asset Mgmt., Inc. v. Lloyd's of London, 61 F.3d 1223, 1230–31 (5th Cir. 1995)).
[42] Doc. 111 at 2, Claim 13.
[43] Doc. 111-4 at 36.
[44] *Id.*

Plaintiffs argue that the phrase "the property described in A. above" means any individual item that falls under Coverage C, which covers "personal property owned or used by an 'insured' while it is anywhere in the world."[45] Plaintiffs' interpretation, therefore, would require UPC to pay RCV instead of ACV for each item valued at or under $500. UPC, by contrast, avers that the phrase means that Plaintiffs are entitled to ACV payments (until the property is repaired or replaced), since the personal property loss exceeds $500 in the aggregate.

In their briefing, the parties submitted no Louisiana or Fifth Circuit cases interpreting a similar provision. This Court must, therefore, determine if the provision is ambiguous. The Court finds that it is not. Any uncertainty surrounding the Policy's threshold can be dispelled by attempting "to construe the ambiguous provisions in light of the contract as a whole, interpreting words that are susceptible of different meanings as having the meaning that best conforms to the object of the contract."[46] Here, it is clear that UPC's aggregate theory best conforms to the object of the contract. The Policy provision at issue was intended to waive the requirement to prove actual repair or replacement under a specific circumstance—namely, when the insured incurs loss to personal property at or under $500. Otherwise, the Policy provides that UPC only pay ACV "until the actual repair or replacement is complete." Plaintiffs argue that reading the Policy in this way "would mean that almost no loss

[45] *Id.* at 10.

[46] *Smith*, 584 F.3d at 216 (citing In re Katrina Canal Breaches Litigation, 495 F.3d 191, 207 (5th Cir. 2007).

would ever be payable initially at replacement cost because it would take very little to exceed the $500.00 threshold."[47] This is just as well. The replacement cost provisions of the Policy reflect UPC's preference to pay replacement cost only upon actual replacement, and it is only for small personal property losses (at or under $500) that that preference gives way to the "administrative convenience of quickly resolving small claims" at RCV without proof of actual replacement.[48] Accordingly, the Court denies summary judgment to Plaintiffs on this claim.[49]

### 6. Whether the 25% Additional Insurance Increases Coverage A Regardless of Whether the Property Is Repaired

The parties' next dispute concerns the application of the 25% additional amount of insurance for Coverage A – Dwelling. Specifically, Plaintiffs ask this Court for summary judgment declaring that the 25% additional insurance coverage increases the Coverage A limit by 25%.[50] UPC counters that repair or replacement is a prerequisite to this additional insurance, and Plaintiffs did not repair or replace. The relevant provision states: "the provisions of this endorsement will apply after a loss, *provided you elect to repair or replace the damaged building*."[51]

---

[47] Doc. 111-2 at 14.

[48] Yancey v. Auto. Ins. Co. of Hartford, No. C11-1329RAJ, 2012 WL 12878687, at *7 (W.D. Wash., Oct. 23, 2012).

[49] For the same reasons as outlined above denying summary judgment as to Claim 13, the Court also denies summary judgment as to Claims 11, 12, and 14. Those three Claims presuppose the item-by-item interpretation rejected above. The Court reads Claim 14 as intending to reference 11 and 12, not 9 and 10.

[50] Doc. 111 at 1, Claim 4. The Coverage A limit was $591,000, so Plaintiffs seek an increase of $147,750. Doc. 111-4 at 1.

[51] Doc. 111-11 (emphasis added).

Plaintiffs counter that "Clause A in the endorsement is not read in conjunction with clause B. There is no conjunction between the two (2) clauses linking them."[52] This is incorrect. The additional insurance endorsement comprises both clauses. Also, Clause A on its own applies to the whole endorsement; it uses the words "this endorsement," not "this Clause" or "this Section." Plaintiffs did not elect to repair or replace the damaged building, as required by the endorsement. Accordingly, the Court denies summary judgment to Plaintiffs on this claim.

**7. Whether the Inflation Guard Applies to Limits on All Coverages**

Plaintiffs next move for summary judgment declaring that the 4% inflation guard in the Policy increases the limits on all coverages.[53] UPC concedes that the 4% inflation guard increases all limits but adds that it does not increase the proper ACV of the loss. The Policy provides that the limits are adjusted annually by at least 4% at the end of the year and that the percentage amount is "[a]pplied pro rata during the policy period."[54] Whether the inflation guard was properly applied is not a dispute presented on summary judgment.[55] Accordingly, this Court grants Plaintiffs' request for summary judgment that

---

[52] Doc. 111-2 at 5 n.11.

[53] Doc. 111 at 1, Claim 1. The inflation guard endorsement, without the applicable percentage, appears at Doc. 111-4 at 35. The percentage is specified in the "Premier Package Endorsement." Doc. 111-4 at 64.

[54] "The limits of liability for Coverages **A**, **B**, **C** and **D** will be increased annually by the percentage amount that is: **1.** Shown in the Schedule above; and **2.** Applied pro rata during the policy period." *Id.* at 35.

[55] UPC points to its adjuster's use of the guard in her calculations. Doc. 128 at 16.

the 4% inflation guard increases the limits on all coverages pro rata in accordance with the terms of the Policy.

**8. Whether the Mitigation Payment of $63,427.91 Was an Unconditional Tender and Is Disputed**

Next, Plaintiffs seek summary judgment declaring that the mitigation payment made to remove the damaged structural components of their home was "an unconditional tender by UPC and that nothing related to this claim is at issue in the case."[56] UPC alleges that this payment was made pursuant to Plaintiffs' misrepresentations that work had been done by Ms. Dieudonne's construction company, Dieudonne Enterprises. In support, UPC submitted deposition testimony from Ms. Dieudonne, as the 30(b)(6) representative of her company, that the work was never completed at the time the invoice was submitted to UPC.[57]

The Louisiana Supreme Court has held, "An accepted, unconditional tender of funds an insurer reasonably believes it owes is not refundable, absent some fraud or ill practices."[58] UPC alleges fraud or ill practices in the form of misrepresentations on the part of Plaintiffs.[59] Thus, assuming the mitigation

---

[56] Doc. 111 at 2, Claim 15.
[57] Doc. 120-7 at 10.

> Q. At the time you deposited the 62,000 -- excuse me -- $63,427.91 into your bank account for Dieudonne Enterprises that you personally endorsed, and this is as of sometime after March 29, 2019 as seen at Exhibit 20, UPC 1120, at that time the mitigation work had not been completed?
> A. It was not complete.
> Q. In fact, it was never completed, was it?
> A. No.

[58] State Farm Mut. Auto Ins. Co. v. Azhar, 620 So. 2d 1158, 1160 (La. 1993).
[59] *See* Doc. 120.

payment was an unconditional tender, it does not follow that it cannot be refunded under any circumstances, and it is certainly not the case that "nothing related to this claim is at issue in the case."[60] Accordingly, the Court will deny summary judgment to Plaintiffs on this claim.

**9. Whether UPC Can Make Various Affirmative Defenses**

Plaintiffs move for summary judgment declaring that some of UPC's affirmative defenses "have no application to the case and are dismissed."[61] Since Plaintiffs do not bear the burden of proof at trial as to these affirmative defenses, they need only point out the absence of evidence supporting essential elements of them.[62] Plaintiffs aver that UPC lacks evidence on the following defenses: failure to state a claim, third-party fault, contributory negligence, other insurance, loss settlement conditions, insurable interest or duties after loss, accord and satisfaction, unjust enrichment, and impairment of subrogation.

With these allegations, the burden shifted to UPC to set forth specific facts showing that there is a genuine issue for trial.[63] In its opposition, UPC refers the Court to its various motions for summary judgment as support for its affirmative defenses. UPC simply asserts that its motions raise issues with respect to the defenses. However, "[t]he non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated

---

[60] Doc. 111 at 2.
[61] *Id.* at 2, Claim 10.
[62] Fitch Marine Transport, LLC v. Am. Commercial Lines, LLC, No. 09-4450, 2010 WL 3825410, at *3 (E.D. La. Sept. 23, 2010) (Lemmon, J.) (citing Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991)).
[63] Warfield v. Byron, 436 F.3d 551, 557 (5th Cir. 2006).

assertions, or only a scintilla of evidence."[64] The Court finds that the arguments made in UPC's motions have only slight implications on most of the affirmative defenses that Plaintiffs seek to dismiss, and the motions do not present more than a "scintilla of evidence" in support of them. The only defense that is supported with specific evidence is the loss settlement condition because that is where the provision allowing recovery for ACV appears. Accordingly, the Court grants summary judgment dismissing all of UPC's affirmative defenses except for the loss settlement condition.

**10. Whether Recovery Under Coverage A Is Limited to ACV**

Finally, both parties agree that any recovery under Coverage A – Dwelling must be limited to ACV. Plaintiffs seek summary judgment on that claim, and UPC filed a motion for partial summary judgment asking for the same declaration.[65] Accordingly, this Court grants Plaintiffs' request for judgment declaring that ACV is the measure of payment or tender under Coverage A – Dwelling,[66] and the Court grants UPC's Motion for Partial Summary Judgment on Limitation of Recovery to Actual Cash Value as unopposed.[67]

---

[64] *Fitch Marine Transport, LLC*, 2010 WL 3825410, at *3 (citing *Little*, 37 F.3d at 1075).

[65] *See* Docs. 111 at 1 Claim 3; 115 (UPC's Motion for Partial Summary Judgment).

[66] Plaintiffs' request for summary judgment as to Claim 9, namely, "if UPC makes an unconditional tender under Coverage A – Dwelling, the tender must be based upon Actual Cash Value," appears to essentially restate the above claim. Doc. 111 at 2, Claim 9. Insofar as the two claims are synonymous, then, they are both granted.

[67] Doc. 115.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**.[68] Defendant's Motion for Partial Summary Judgment on Limitation of Recovery to Actual Cash Value is **GRANTED**.

New Orleans, Louisiana this 30th day of September, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

[68] See *supra* note 1 for which claims from Plaintiffs' Motion are granted or denied.