UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY DIEUDONNE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12476** |
| **UNITED PROPERTY AND CASUALTY INSURANCE COMPANY** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court are Defendant United Property and Casualty Insurance's Motion for Partial Summary Judgment on Denial of Plaintiffs' Claims Pursuant to Louisiana Revised Statutes §§ 22:1973 and 22:1892 (Doc. 122), Motion for Summary Judgment on Plaintiffs' Misrepresentations (Doc. 120), Motion for Partial Summary Judgment on Credits Due and Amounts Not Owed (Doc. 117), and Motion for Summary Judgment on UPC's Satisfaction (Doc. 124).

For the following reasons, the Motion for Partial Summary Judgment on Denial of Plaintiffs' Claims Pursuant to Louisiana Revised Statues §§ 22:1973 and 22:1892 is **DENIED**; the Motion for Summary Judgment on Plaintiffs'

1

Misrepresentations is **DENIED**; the Motion for Partial Summary Judgment on Credits Due and Amounts Not Owed is **GRANTED IN PART AND DENIED IN PART**; and the Motion for Summary Judgment on UPC's Satisfaction is **DENIED**.

## BACKGROUND

This case arises out of a fire that destroyed much of Plaintiffs Anthony and Tina Dieudonne's house on January 7, 2019. On the date of loss, Plaintiffs had a homeowner's insurance policy ("the Policy") issued by Defendant United Property and Casualty Insurance Company ("UPC"). Shortly after the fire, Plaintiffs submitted satisfactory proof of loss, and UPC began adjusting the loss and tendering payments. Contesting UPC's handling of their claim, Plaintiffs filed suit in July of 2019, claiming that UPC breached its obligations under the Policy and handled their claim in bad faith. On February 19, 2020, Plaintiffs sold the house.

UPC has four motions for partial or full summary judgment before the Court. The first seeks to dismiss Plaintiffs' bad faith claims.[1] The second moves to invoke a Policy provision that voids the Policy upon proof of misrepresentation or fraud on the part of Plaintiffs.[2] The third asks the Court to declare that UPC is entitled to reimbursement for certain amounts paid and that other amounts in dispute are not owed.[3] Finally, the fourth seeks to

---

[1] *See* Doc. 122.
[2] *See* Doc. 120.
[3] *See* Doc. 117.

dismiss Plaintiffs' claims in their entirety.[4] The Court will address each motion in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that

---

[4] *See* Doc. 124.
[5] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[8] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[10] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

## LAW AND ANALYSIS

### I. Defendant's Motion for Partial Summary Judgment on Denial of Plaintiffs' Claims (Doc. 122)

Defendant UPC moves for summary judgment dismissing Plaintiffs' bad faith claims made under Louisiana Revised Statutes §§ 22:1892 and 22:1973. The Court will address each statute in turn.

#### 1. Louisiana Revised Statute § 22:1892

In response to UPC's motion for summary judgment on Plaintiffs' bad faith claims, Plaintiffs withdrew their bad faith claims for penalties and attorneys' fees under § 22:1892.[13] Accordingly, the Court dismisses this motion as moot with respect to Plaintiffs' bad faith claim under § 22:1892.

---

[10] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[11] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[13] Doc. 135 at 2 n.1.

### 2. Louisiana Revised Statute § 22:1973

Plaintiffs allege several instances of bad faith under § 22:1973 in UPC's handling of their claim. First, Plaintiffs argue that the initial Coverage A payment of $170,606.25, based on a reduced estimate, was arbitrary and capricious. Second, Plaintiffs aver that UPC's calculation of depreciation was in bad faith. Lastly, Plaintiffs contend that UPC was in bad faith for failing to pay for some items and for untimely paying for others. UPC counters that any delays or withholdings were the product of reasonable disagreement over and investigation into suspicious activity from Plaintiffs.

Section 1973 imposes on insurers "a duty of good faith and fair dealing" owed to their insureds.[14] Failure "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" constitutes a breach of the duty of good faith and fair dealing.[15] "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ."[16] "[W]hen there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits

---

[14] LA. REV. STAT. § 22:1973(A).
[15] *Id.* § 22:1973(B)(5).
[16] Daniels v. Scottsdale Ins. Co., No. 19-10632, 2020 WL 7183364, at *4 (E.D. La. Dec. 7, 2020) (Ashe, J.) (quoting Dupree v. Lafayette Ins. Co., 51 So. 3d 673, 698 (La. 2010)) (internal quotations omitted).

when such reasonable doubts exist.'"[17] Notably, "[w]hether an insurer has been arbitrary and capricious is generally a question of fact."[18]

Plaintiffs' first allegation of bad faith is based on UPC's initial Coverage A payment of $170,606.25.[19] Plaintiffs allege that this payment was based on an estimate that was manipulated by UPC so as to reflect lower values for the insured property.[20] In support, Plaintiffs note that UPC hired DKI, an independent contractor, to inspect their property on January 11, 2019. The inspection yielded an estimated replacement cost value ("RCV") under Coverage A of $294,100.12 and an actual cash value ("ACV"), less deductible, of $228,087.11.[21] DKI performed a second inspection on February 7, 2019 and this time estimated the RCV at $301,813.08.[22] The next day, UPC's manager Sebastian Paul rejected both estimates and revised the RCV to be $224,063.41, with an ACV, less deductible, of $170,606.25—the amount tendered.[23] Both parties agree that Coverage A payments should be based on ACV, but Plaintiffs aver that UPC's payment based on Mr. Paul's reduced estimate—rather than DKI's valuations—constituted bad faith.

UPC contends that the revised estimates "reflected a reduction from high-end values to standard values" because the "extent of higher-grade

---

[17] *Id.* (quoting La. Bag Co. v. Audubon Indem. Co., 999 So. 2d 1104, 1114 (La. 2008)
[18] Ferguson v. State Farm Ins. Co., 2007 WL 1378507, at *4 (E.D. La. May 9, 2007) (Berrigan, J) (quoting La. Maint. Serv. Inc. v. Certain Underwriters at Lloyd's of London, 616 So. 2d 1250, 1253 (La. 1993)) (internal quotations omitted).
[19] *See* Doc. 122-37 at 3 (sealed).
[20] Doc. 135 at 17–18.
[21] Doc. 135-11 at 42.
[22] Doc. 135-17 at 40. This estimate does not reflect an ACV.
[23] Docs. 122-9 at 20–21; 122-37 at 3 (sealed).

finishes and items was disputed."²⁴ These concerns as to the quality of the lost property may well have been reasonable, but the Court finds that there are genuine issues of material fact on this point. Indeed, Plaintiffs point to evidence from UPC's claim notes that Mr. Paul himself noted the higher quality finishes of the property, and the claims adjuster and DKI confirmed the same.²⁵

UPC's only evidence justifying its dispute as to the finishes is a discrepancy between Plaintiffs' representations of lower quality materials in their initial application for insurance and their description of higher end finishes in their claim of loss.²⁶ UPC argues that this discrepancy renders their reduced payment reasonable in light of the uncertainty over the quality of the finishes. This discrepancy, however, does not resolve the fact issue created by DKI's inspections and estimates that corroborate Plaintiffs' representations of high-quality finishes. The lone fact of a disparity between Plaintiffs' application and their claim is not enough to convince this Court that UPC acted reasonably as a matter of law. Accordingly, summary judgment is denied on this claim, and the Court need not consider Plaintiffs' other allegations of bad faith.²⁷

---

²⁴ Doc. 122-1 at 10–11.
²⁵ Docs. 135-6 at 4, 5, 8; 135-19.
²⁶ Doc. 122-1 at 9–10.
²⁷ For purposes of trial, however, the Court notes that UPC was not in bad faith when it depreciated labor costs, overhead and profit, and sales tax; nor was UPC in bad faith when it depreciated personal property valued at or under $500. The Court has previously found that these practices were reasonable. *See* Doc. 193 at 8–11, 13–15.

7

## II. Defendant's Motion for Partial Summary Judgment on Plaintiffs' Misrepresentations (Doc. 120)

Defendant moves for summary judgment declaring that Plaintiffs made material misrepresentations to UPC, thereby triggering a Policy provision that allows the insurer to void the Policy. The provision reads, "[W]e do not provide coverage to the 'insured' who, whether before or after a loss, has . . . [i]ntentionally concealed or misrepresented any material fact or circumstance . . . relating to this insurance."[28] In an earlier Order, the Court determined that UPC failed to carry its burden under Federal Rule of Civil Procedure 16(b) to amend its Answer so as to specifically plead this provision as an affirmative defense in accordance with Rule 8(c).[29] A technical failure to comply with Rule 8(c) does not necessarily result in a waiver, though.[30] If the defense is raised in such a way as to not result in prejudice or unfair surprise to the other party, then the trial court may consider the defense.[31]

Here, the Court finds that allowing the Defendant to assert this Policy provision would result in prejudice to Plaintiffs. UPC moved to amend its answer after both Plaintiffs were deposed and after the 30(b)(6) deposition of UPC was taken.[32] After UPC's request to amend was denied, it did not raise

---

[28] Doc. 120-5 at 49.
[29] Doc. 80.
[30] Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co., Inc., 418 Fed. Appx. 327, 330 (5th Cir. 2011) (citing Allied Chemical Corp. v. Mackay, 695 F.2d 854, 855 (5th Cir.1983)).
[31] *See* Donahue v. Republic Nat'l Distributing Co., 489 F. Supp. 3d 455, 467 (E.D. La. 2020) (Milazzo, J).
[32] The defense of voiding the Policy based on one of its provisions first appears in UPC's Motion for Leave to File an Amended Answer, filed on December 28, 2020. Doc. 74.

8

this argument again until the filing of this summary judgment motion, which occurred after discovery was closed.[33] As a result, UPC's invocation of this Policy provision as a defense prejudices Plaintiffs insofar as further factual development was effectively precluded. Thus, the Court denies Defendant's Motion for Partial Summary Judgment on Plaintiffs' Misrepresentations as not properly before the Court.

Nevertheless, while UPC may not raise this provision as a defense that voids the Policy altogether, it is not the case that all payments made by UPC are necessarily nonrefundable. The Louisiana Supreme Court has held that "[a]n accepted, unconditional tender of funds an insurer reasonably believes it owes is not refundable, absent some fraud or ill practices."[34] Therefore, while UPC may not invoke the above provision of the Policy, it may dispute any payments made to Plaintiffs because of some fraud or ill practice and may receive a credit or reimbursement for those payments if so entitled.

## III. Defendant's Motion for Partial Summary Judgment on Credits Due and Amounts Not Owed (Doc. 117)

UPC moves for summary judgment declaring that it is entitled to credits for payments made to Plaintiffs for work never done or not needed. UPC also seeks a declaration that certain unpaid amounts in dispute are not owed. Plaintiffs contend that the work was done as needed, so the payments are

---

Plaintiffs were deposed earlier, on December 4, 2020. Docs. 120-8, 120-27. The deposition of UPC occurred even earlier, on November 11, 2020. Doc. 89-6.

[33] This Motion for Summary Judgment on Plaintiffs' Misrepresentations was filed May 18, 2021. Doc. 120. The discovery deadline was May 1, 2021. Doc. 88.

[34] State Farm Mut. Auto. Ins. Co. v. Azhar, 620 So. 2d 1158, 1160 (La. 1993).

9

nonrefundable as unconditional tenders. They also argue that the unpaid amounts are due under the Policy. The Court will address each payment or amount in dispute in turn.

### 1. Mitigation Payment

On March 29, 2019, UPC paid Plaintiffs $63,427.91 for mitigation work allegedly done by Ms. Dieudonne's construction company, Dieudonne Enterprises ("DE"). To receive this payment, Plaintiffs had to submit to UPC an invoice from DE with line items of various mitigation-related services.[35] UPC now argues that Plaintiffs did not pay DE to perform all of these services. Instead, UPC alleges, Plaintiffs contracted with and paid MAC Construction $10,695 for some of the mitigation work, leaving the rest undone. UPC contends that the DE invoice submitted by Plaintiffs misrepresented that all of the services listed on the invoice were paid for by them.[36] UPC seeks a credit of $52,732.91, the balance of the mitigation tender after subtracting the payment to MAC.

"Louisiana law provides that an insurer may avoid coverage on grounds of material misrepresentation only if: '(1) the statements made by the insured were false; (2) the misrepresentations were made with the actual intent to

---

[35] Doc. 117-13. The DE invoice reflects a balance due of $70,512.72. Doc. 117-13 at 1. The DKI estimate values the mitigation services at $63,427.91 in total. The $7,084.81 difference between the DE invoice and the DKI estimate allegedly comes from the Kilz primer line item on the DE invoice, which was never performed. However, that item is estimated at $7,762.50. UPC does not explain the $677.69 difference.

[36] Ms. Cranfill's notes state, "[Mr. Dieudonne] has obtained the permit for the mitigation and immolation of the damaged items and will submit as an incurred expense." Doc. 117-13 at 3.

deceive; and (3) the misstatements materially affected the risk assumed by the insurer.'"[37] The intent to deceive may be "inferred from circumstances that create a reasonable assumption that the [insured] was aware of the falsity of his representations."[38] Nevertheless, "cases which turn on state of mind are rarely appropriate for summary judgment."[39] "[W]hen state of mind is at issue, summary judgment is less fashionable because motive or intent is inherently a question of fact which turns on credibility."[40]

In evaluating Plaintiffs' alleged state of mind, "the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party."[41] UPC argues that there is "[n]o question of fact . . . that Plaintiffs never completed the scope of work represented on the [DE] mitigation invoice."[42] However, UPC's adjuster, Ms. Cranfill, noted that, based on photos submitted from Plaintiffs' agent, "you can see the mitigation was completed by the insured's construction company so UPC will owe the approved mitigation estimate."[43] When Ms. Cranfill testified

---

[37] Roach v. Allstate Indem. Co., No. 09-1110, 2011 WL 4402575, at *2 (M.D. La. Sept. 20, 2011), *aff'd*, 476 Fed. Appx. 778 (5th Cir. 2012) (citing Cousin v. Page, 372 So. 2d 1231, 1233 (La. 1979)).

[38] *Id.* (quoting Mamco, Inc. v. Am. Employers Ins. Co., 736 F.2d 187, 190 n.6 (5th Cir. 1984)) (alteration in original).

[39] Pacific Ins. Co. v. La. Auto. Dealers Ass'n, No.01-30081, 2001 WL 1013089, at *4 (5th Cir. Aug. 3, 2001) (collecting cases, including *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 n.3 (5th Cir. 1993); *Krim v. BancTexas Grp.*, 989 F.2d 1435, 1449 (5th Cir. 1993); *Pryor v. State Farm Mut. Ins. Co.*, 663 So. 2d 112, 114 (La. Ct. App. 3d Cir. 1995)).

[40] *Bodenheimer*, 5 F.3d at 956 n.3

[41] Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266 (5th Cir.1991) (emphasis in original).

[42] Doc. 117-1 at 8.

[43] Doc. 134-5.

during her deposition, she confirmed that she had no concerns of fraud while adjusting Plaintiffs' claim.[44] UPC's corporate representative testified similarly, stating that he had no personal knowledge of fraud on Plaintiffs' part.[45]

Plaintiffs also note that UPC's contractor, DKI, estimated the cost of mitigation at an amount similar to what they allegedly paid DE for the same work.[46] UPC, therefore, has not shown that Plaintiffs overvalued the cost of a full mitigation, which would constitute circumstantial evidence of deceptive intent.[47] Additionally, Stephen McCready, the corporate representative of MAC, testified that he began work after "a bunch of stuff was already done," suggesting that some mitigation work had already been performed.[48] In light of the above evidence, and drawing reasonable inferences in favor of Plaintiffs, the Court cannot say there are no genuine issues as to Plaintiffs' alleged deceptive intent. Accordingly, the Court denies summary judgment to UPC on this claim.

### 2. Roof Payment

UPC moves for a credit for its payment to Plaintiffs for their roof. The initial dwelling payment to Plaintiffs was based on an estimate that did not

---

[44] Doc. 79-5 at 3–7.
[45] Doc. 134-20 at 6.
[46] *See supra* note 35.
[47] Dominio v. Allstate Ins. Co., No. 09-7348, 2010 WL 4668332, at *4 (E.D. La. Nov. 9, 2010) (Fallon, J.) ("Overvaluation of items and absence of claimed items from the property at the time of the fire are criteria for material misrepresentation, as well as circumstantial evidence of intent.").
[48] Doc. 134-3 at 3.

include roof repair. However, a reinspection included roof-related line items.[49] The second Coverage A payment from UPC to Plaintiffs was an unconditional tender that included an amount for the roof damage.[50] "Unconditional simply means that the insurer cannot place conditions on the tender, such as requiring a release or limiting the use of the funds."[51] Nowhere does UPC indicate that it made this second payment under a reservation of rights or some other condition. There are no "strings attached" to an unconditional tender; and here UPC has not pointed to any string that it attached to the roof payment.[52]

An unconditional tender is nonrefundable absent some fraud or ill practice. In the motion before the Court, UPC presents no evidence of fraud or ill practice. Instead, it argues that the roof replacement was "not owed because the roof was not damaged in the fire."[53] Since there is no evidence of fraud or ill practice in this motion, the Court denies summary judgment to UPC on this claim.

### 3. Payment for Cabling in Property

Next, UPC moves for a credit because of a payment for cabling in the damaged property. UPC alleges that there was no basis to justify replacing the entirety of the cabling because it was not damaged in the fire. Again, however, UPC made an unconditional tender of this cabling payment and does not allege

---

[49] Doc. 134-7 at 41.
[50] This payment occurred on May 8, 2019 in the amount of $196,533.13. Doc. 117-35 at 10. UPC concedes that this payment included an amount for the roof. Doc. 117-1 at 12–13.
[51] Jones v. Johnson, 56 So. 3d 1016, 1023 (La. Ct. App. 2d Cir. 2010).
[52] *See* Clark v. State Farm Mut. Auto. Ins. Co., 785 So. 2d 779, 791 (La. 2001).
[53] Doc. 117-1 at 13.

fraud or ill practices in this motion. As a result, the Court denies summary judgment to UPC on its claim for a credit for the cabling payment.

### 4. Amount Due for Pack Out, Pack Back

UPC seeks summary judgment declaring that it does not owe the amount reflected on DE invoices submitted by Plaintiffs for pack out, pack back services. "Pack out, pack back" refers to the cleaning, packing, moving into storage, moving out of storage, and unpacking of salvageable contents. UPC alleges the pack out, pack back services never occurred as represented by Plaintiffs. Plaintiffs presented a DE invoice in the amount of $23,028.07 to receive payment for pack out, pack back.[54] Ms. Dieudonne later submitted a more detailed, line-item invoice for a total of $22,747.06 for those services.[55] Plaintiffs filed suit not long after submitting the second invoice, and the payment was never made.[56]

UPC has presented uncontested evidence that indicates that the services as identified on the DE invoices for pack out, pack back were not performed. However, there are issues of material fact as to what pack out, pack back was actually performed and what amounts are owed. UPC's inspector, who investigated Plaintiffs' office six months after the pack out, pack back was allegedly done, found evidence that some services were performed.[57] "Where

---

[54] *See* Doc. 117-33 (DE pack out, pack back invoice).

[55] Doc. 117-10 (DE detailed pack out, pack back invoice)

[56] Since the payment for pack out, pack back was not made, there has not been an unconditional tender, and therefore the rule from *Clark* does not apply to this amount in dispute, or to the amounts analyzed in III.5–7.

[57] *See* Doc. 117-1 at 21–22.

contested, the proper measure of actual loss, like the measure of recovery under the policy, is a question of fact."[58] Thus, these disputes surrounding pack out, pack back are fact issues best addressed at trial.

### 5. Amount Due for Brick Veneer

UPC seeks summary judgment declaring that no amounts are owed for the repair and replacement of the entire brick veneer of the damaged property since it was not damaged in the fire.[59] Plaintiffs argue that to replace the windows damaged in the fire, the brick veneer must be removed for proper window installation and seal. Plaintiffs allege that replacing only part of the bricks to seal the window will result in a mismatch in color between the old and new brick.

The parties agree that recovery under Coverage A is limited to ACV.[60] ACV is the amount needed to repair or replace *the damaged property* minus depreciation.[61] It is uncontested that the brick veneer was not damaged; Plaintiffs' sole argument is that the veneer must be replaced in order to install the windows. The Policy is clear and unambiguous that ACV only applies to damaged property. The brick veneer was not damaged. Additionally, ACV can

---

[58] *Bradley*, 620 F.3d at 522.
[59] Doc. 117-1 at 22.
[60] *See* Doc. 193 (granting Motion for Partial Summary Judgment on Limitation of Recovery to Actual Cash Value as unopposed).
[61] Both parties agree that this is the Policy's definition of ACV. Docs. 111-2 at 6 ("ACV is defined in UPC's policy as the amount needed to repair or replace the damaged or destroyed property, minus the depreciation."); 128 at 9 ("Starting with the UPC Policy itself, actual cash value is defined as 'the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.'").

15

be determined by replacement cost *or* repair cost, and Plaintiffs have provided no facts to suggest that the cost of repairing the windows necessarily includes the cost of replacing the entire brick veneer.[62] Accordingly, the Court grants summary judgment to UPC on the claim that it does not owe ACV on the entire brick veneer.

### 6. Amount Due for Wood Deck

The parties agree that if the Policy does not require UPC to pay for the brick veneer, then it follows that the Policy does not require compensation for the wood deck. Accordingly, the Court grants summary judgment to UPC that it does not owe amounts for the ACV of the second-floor wood deck.

### 7. Amount Due for Gutters

Lastly, UPC seeks summary judgment declaring that it does not owe any amounts for repair and replacement of the gutters at the damaged property. It argues that Plaintiffs' only justification for recovering funds for the gutters is their expert's estimate that included a line item for gutters. Plaintiffs argue that whether the gutters are recoverable is a fact question and that UPC only relies upon their expert's deposition, not his report.

The Court agrees that there is no genuine issue of material fact as to the need to replace the gutters on the insured property. Plaintiffs' expert testified

---

[62] *See, e.g.*, Stipp v. Metlife Auto and Home Ins. Agency, Inc., 131 So.3d 455 (2013) (holding that the insurer did not breach its policy by paying the cost to repair, rather than replace, the damaged property).

16

that he included a $4,200 line-item for the gutters based on DKI's estimate.[63] However, DKI's estimate provides a $156.96 line item titled "Detach & Reset Gutter / downspout."[64] Thus, it is uncontested that the gutters did not need to be replaced. As to the actual amount of loss on the gutters, however, that is a question of fact. The Court, therefore, grants summary judgment declaring that UPC is not obligated to pay for the replacement of the gutters.

## IV. Defendant's Motion for Summary Judgment on UPC's Satisfaction (Doc. 124)

Finally, UPC moves the Court to grant summary judgment declaring that is has satisfied any and all obligations it may have owed to Plaintiffs. As UPC notes, that relief is appropriate where the Court grants UPC's other motions for summary judgment. Given that the Court has denied some of those motions, the Court must deny summary judgment on this motion as well.

## CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment on Denial of Plaintiffs' Claims Pursuant to La. R.S. 22:1973 and 22:1892 (Doc. 122) is **DENIED**; the Motion for Summary Judgment on Plaintiffs' Misrepresentations (Doc. 120) is **DENIED**; the Motion for Partial Summary Judgment on Credits Due and Amounts Not Owed (Doc. 117) is **GRANTED IN PART AND DENIED IN PART**; and the Motion for Summary Judgment on UPC's Satisfaction (Doc. 124) is **DENIED**.

---

[63] Doc. 117-28 at 10–11.
[64] Doc. 134-21 at 39.

New Orleans, Louisiana this 1st day of November, 2021.

_____
 **JANE TRICHE MILAZZO
 UNITED STATES DISTRICT JUDGE**